UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSHUA WELCH,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | No.  2:15-cv-00206-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 14, and Defendant's Motion for Summary Judgment, ECF No. 15. The motions were heard without oral argument. Plaintiff is represented by Dana Madsen. Defendant is represented by Assistant United States Attorney Timothy Durkin and Special Assistant United States Attorney Richard Rodriguez.

**I.    Jurisdiction**

On October 11, 2011, Plaintiff filed an application for supplemental security income payments (SSI). Plaintiff alleged he is disabled beginning November 15, 1994, due to bilateral sydactyly (club feet), attention deficit hyperactivity disorder (ADHD), posttraumatic stress disorder (PTSD), and depression.

His application was denied initially on February 9, 2012, and again denied on reconsideration on April 24, 2012. A request for a hearing was made on April 30, 2012.

On September 4, 2013, Plaintiff appeared and testified at a hearing held in Spokane, Washington before Administrative Law Judge (ALJ) James Sherry. Marian Martin, Ph.D., an impartial medical expert, testified. Thomas A. Polsin, vocational expert, also appeared and testified. Plaintiff was represented by attorney Dana Madsen.

The ALJ issued a decision on February 20, 2014, finding that Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which denied his request for review on June 12, 2015. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. §405(h).

Plaintiff filed a timely appeal with the U.S. District Court for the Eastern District of Washington on September 8, 2015. The instant matter is before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

compensation above the statutory minimum. 20 C.F.R. § 404.1574; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1571. If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1508-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. § 404.1520(g).

The initial burden of proof rests upon the claimant to establish a prima facie

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 3

case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

### III. Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### IV. Statement of Facts

At the time of the hearing, Plaintiff was 36 years old. He is single and lives in a halfway house. Plaintiff received SSI Disability from 1993 to 2000, but this

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

was terminated after he was incarcerated. He has been denied benefits since his release. Plaintiff obtained his GED in prison. He dropped out of high school after being held back and placed in special education classes. He reported a repeated pattern of sexual assault victimization by relatives between the ages of 9-12. Plaintiff was born with modified club feet, and his feet have not been surgically repaired. As a result, he has constant pain in both feet.

At the hearing, Plaintiff indicated he attended counseling when he was on the CJC Program in Spokane, as part of the terms of his probation.[1] He tried working at different times, but he had difficulty holding down jobs due to the fact that he was not able to learn the tasks. Most of his jobs have been labor jobs, but it was difficult to complete the tasks because of his feet. He cannot stay on his feet very long and cannot walk far distances. He testified he can walk between three and four blocks before he has to stop and take a break. If he is standing, he has to constantly change positions. The longest he can stand in line at a stretch is about 20 minutes. He cannot climb stairs because it makes him feel like the tendons in his feet are about to burst. He is living on the bottom floor because he cannot do stairs. He also suffers from back pain and has trouble with his wrists, with limited movement and lack of grip strength. He testified that he experiences panic attacks and deals with ongoing depression. He took Prozac while incarcerated and that helped him but he does not take any medication currently because he cannot afford it.

He reported he has difficulty dealing with too many people at one time. He has a friend do his grocery shopping for him. He usually stays at home unless he has appointments. He does not drive, but can take the bus. He performs little household chores.

**V.    The ALJ's findings**

---

[1] The Court believes Plaintiff was referring to the Spokane Community Justice Center.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 11, 2011, the application date. (Tr. 14.)

At step two, the ALJ found Plaintiff has the following severe impairments: depressive disorder not otherwise specified; anxiety disorder not otherwise specified with posttraumatic stress disorder features; antisocial personality disorder with borderline and/or depressive features; mild cervical and lumbar degenerative disk disease; arthritic changes of the MP joints of the feet; valgus deformity of the left ankles; and bilateral sydacyly, greater on the left. (Tr. 14.)

At step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal the severity of the impairments listed. (Tr. 19.) Specifically, the ALJ considered Listing 12.04 Affective Disorders; 12.06 Anxiety-Related Disorders, and 12.08 Personality Disorders.

The ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b). He can lift up to 20 pounds at a time and frequently lift or carry up to 10 pounds. He can stand or walk for approximately 6 hours in an 8-hour workday. He can push/pull within the stated weight restrictions. He can never climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs, balance, or crouch. He should avoid concentrated exposure to excessive vibration, unprotected heights, and use of machinery. He is capable of understanding and performing simple, routine, and repetitive tasks with only occasional, simple decision-making and changes in the work setting, and not fast paced-production requirements. He should avoid social interactions with the public, but is capable of occasional, superficial interaction with coworkers and supervisors. He cannot work around children or vulnerable adults. (Tr. 20.)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 23.)

In the alternative, the ALJ found there were jobs that exist in significant

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 6

numbers in the national economy that Plaintiff can perform. (Tr. 25.) The ALJ relied on the testimony of a vocational expert, and concluded that Plaintiff was capable of performing the requirements of representative occupations such as laundry folder, housekeeper/cleaner, or photocopy machine operator. As such, the ALJ concluded that Plaintiff was not disabled from October 11, 2011, the date the application was filed.

**VI.   Issues for Review**

      1.    Whether the ALJ properly evaluated the medical opinion evidence?

      2.    Whether the ALJ properly evaluated Plaintiff's credibility?

**VII.   Discussion**

      **1.    Medical Opinions**

The ALJ gave great weight to the medical opinions of the non-examining state agency consultants Dr. Marian Martin, Ph.D and Dr. Dale Thuline, but gave little weight to the medical opinions of examining physicians Dr. Kayleen Islam-Zwart, Ph.D., and Dr. John Arnold, Ph.D.

The ALJ is tasked with resolving conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors provide medical evidence: treating doctors, examining doctors, and reviewing (non-examining) doctors. "By rule the Social Security Administration favors the opinion of a treating physician over non-treating physicians." 20 C.F.R. § 416.927[2]; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating

---

[2] 20 C.F.R. § 416.927(c)(2) states: Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Orn*, 495 F.3d at 631. If a treating physician's opinion is not given "controlling weight" because it does not meet these requirements, the ALJ should consider (i) the length of the treatment relationship and the frequency of examination by the treating physician; and (ii) the nature and extent of the treatment relationship between the patient and the treating physician in determining the weight it will be given. *Id.* The ALJ is not required, however, to merely accept the opinion of a treating doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where contradicted, the ALJ may reject the opinion for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* This requires the ALJ to "[set] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and [make] findings." *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). On the other hand, where the treating doctor's opinion is not contradicted, the ALJ can only reject it for clear and convincing reasons. *Id.*

The opinions of examining physicians are afforded more weight than those of non-examining physicians. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Factors the ALJ should consider in evaluating any medical opinion (not limited to the opinion of the treating physician) include: (1) the amount of relevant evidence that supports the opinion and the quality of the explanation provided; (2) the consistency of the medical opinion with the record as a whole; (3) the specialty of the physician providing the opinion; and (4) other factors, such as the degree of understanding a physician has of the Administration's disability programs and individual examinations, such as consultative examinations or brief hospitalizations.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

their evidentiary requirements and the degree of his or her familiarity with other information in the case record. *Orn*, 495 F.3d at 631. When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

While the opinion of a non-examining physician alone is insufficient to reject the opinion of a treating or examining physician, *Lester v. Chater*, 81 F.3d 821, 830-1 (9th Cir. 1995), specific and legitimate reasons supported by substantial evidence is not. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Martin took issue with Dr. Arnold's report. Dr. Arnold examined Plaintiff and noted that Plaintiff's comments appeared in earnest (with noticeable bravado), and made his best efforts during the MSE. Although his MMPI-2RF profile was judged invalid, due to what appeared to be over endorsement of psychopathological items, Dr. Arnold attributed this to Plaintiff's clinically significant personality problems. He theorized that when Plaintiff was called upon to be more introspective, "his personality problems tend to get in the way." He concluded that the testing was a generally valid and reliable reflection of Plaintiff's current psychological functioning, with some tendency toward embellishment.

Dr. Martin believed the limitations identified by Dr. Arnold were not accurate and did not reflect the actual test results. But Dr. Arnold examined Plaintiff and Dr. Martin did not. The ALJ accepted Dr. Martin's assessment that Dr. Arnold appeared to rely on an invalid MMPI profile, but as set forth above, that is not true. Dr. Arnold's assessment took into consideration the invalid MMPI profile. Dr. Arnold was aware of the MMPI results that reflected Plaintiff's over endorsement of psychopathological items and it is clear his final opinion accounted for these issues. The ALJ's rejection of Dr. Arnold's opinion was not

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

supported by substantial evidence.

Dr. Martin also took issue with Dr. Islam-Zwart's 2013 examination of Plaintiff, and apparently Dr. Islam-Zwart's administering of the Trails B test. Dr. Islam-Zwart examined Plaintiff in 2011 and 2013. In 2011, she concluded that with motivation and persistence, it seems that Plaintiff will be able to secure and maintain employment. In 2013, she concluded Plaintiff might have difficulty working in a regular and sustained fashion at this time. She noted there was no indication of malingering, and that Plaintiff appeared to put forth adequate effort during the evaluation, although Plaintiff seemed distracted at times and would make random comments on occasion. Other than a little restlessness and fidgeting, he did not exhibit any motor problems or pain behaviors. He requires a few questions repeated. Notably, Plaintiff's Trails B test fell in the moderately impaired range.

Dr. Martin concluded there was not anything in the record to account for the decrease in functioning other than the tendency to over report symptoms and the ALJ relied on that conclusion to reject Dr. Islam-Zwart's conclusions. However, as set forth above, Dr. Arnold took Plaintiff's embellishments and over endorsement of psychopathological items into consideration in forming his conclusions and thus, these tendencies cannot be the only reason for his decline. Also, it is not clear how these tendencies would impact the Trails B test, which is a neuropsychological test of visual attention and task switching. More importantly, Dr. Martin's opinion did not address what changed between 2000, when Plaintiff was deemed disabled and 2011, when he was not. Apparently, one can get better, but not worse. The ALJ did not provide specific reasons supported by substantial evidence to reject Dr. Islam-Zwart's 2013 conclusions. Dr. Martin's testimony alone is not sufficient.

Dr. Thuline, the non-examining state agency medical consultant, opined that Plaintiff was capable of a wide range of light exertion with postural and

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

environmental limitations, and the ALJ gave this opinion great weight, while focusing on only a portion of Dr. Hull's report that did not address Plaintiff's complaints of pain. Dr. Hull concluded that Plaintiff appeared to be a reliable historian and he did not question Plaintiff's statements that he is in constant pain because of his feet. Specifically, Plaintiff reported to Dr. Hull that his feet cause him constant, sharp, and burning pain that goes up his legs. The pain occurs every time Plaintiff is on his feet and it lasts 3-4 hours. Walking, exercise, and standing make it worse while nothing helps to relieve the pain. Plaintiff stated that his pain affects his ability to work because he is unable to stand on his feet. Dr. Hull made no recommendation regarding Plaintiff's ability to work. It seems Dr. Thuline failed to account for Plaintiff's pain while standing and his inability to climb stairs. The ALJ accepted Dr. Thuline's opinion while failing to address Dr. Hull's diagnosis of bilateral foot sydactyly with pronounced valgus deformity at the left ankle; failing to consider whether this diagnosis would cause the level of pain described by Plaintiff; and failing to account for the silence in Dr. Hull's report of any indication that Plaintiff was over-exaggerating his symptoms of pain. In addition, the medical records from the Department of Corrections reflect that Plaintiff was treated for back pain, wrist numbness, pain and swelling, as well as anxiety, which support Plaintiff's self-reporting to Dr. Hull. Notably, it appears the DOC provided Plaintiff with orthotics to help him deal with the pain in his feet.

  The ALJ did not adequately provide sufficient weight to Dr. Hull's report regarding Plaintiff's reports of pain. There is nothing in the record to suggest that a diagnosis of bilateral foot sydactyly with pronounced vulgus deformity would not produce the extent of pain, nor the limitations described by Plaintiff.

  The ALJ relied on the lack of treatment records to find that Plaintiff's limitations were not disabling. It is clear from the record, however, that Plaintiff missed his opportunity to have his club feet surgically repaired, and there are little

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

treatment options. Also, Plaintiff testified that he is unable to obtain treatment for his symptoms because he does not have the financial ability to pay for them.

### 2. **Plaintiff's Credibility**

The ALJ found that Plaintiff's statements concerning his limitations were not credible. An ALJ's assessment of a claimant's credibility is entitled to "great weight." *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir.1990). When there is no evidence of malingering, the ALJ must give "specific, clear and convincing reasons" for rejecting a claimant's subjective symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

The ALJ's adverse credibility determination is not supported by the record. There is nothing in the record to discredit Plaintiff's reporting of the pain and limitations caused by his club feet. Also, the ALJ believed Plaintiff's complaints of carpal tunnel syndrome limiting his use of his hands is not supported by the longitudinal record, rather the ALJ considered it a new impairment raised at the time of the hearing. The record indicates, however, that Plaintiff had problems with his wrists while he was incarcerated to the extent that the prison ordered him wrist braces to use while he was in custody. The ALJ also believed the record indicates that Plaintiff worked in mowing, raking and picking litter 48 hours a month. The closer look at the record reveals that the crew tried to limit the amount of time he was picking up litter because it was walking and they knew about his feet.

The ALJ relies on minor inconsistencies in the record regarding the extent of Plaintiff's limitations caused by his club feet. Specifically, the ALJ relies on the fact that at some point Plaintiff stated that he could stand 10 minutes and walk 1-2 blocks and at another time stated that he could stand 20 minutes and walk 3-4 blocks before needing to stop and rest. A 10 minute discrepancy is not clear and convincing evidence to conclude that Plaintiff is not credible when describing his limitations and pain caused by his club feet. Similarly, the ALJ takes issue with Plaintiff's statement that he could walk up to 10 blocks before needing to take the bus. This statement is not inconsistent. Rather, Plaintiff was merely explaining that if he had to walk more than 10 blocks, he would try to take the bus. He did not say he could walk 10 blocks before needing to stop and rest. The ALJ failed to provide clear and convincing reasons for concluding Plaintiff was not credible about his pain and limitation resulting from his club feet.

Also, the ALJ concluded that since Dr. Islam-Zwart's opinion changed between the 2011 and the 2013 exams, this reflected adversely on Plaintiff's credibility because "it behooved him to act more disabled in the second, thus

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

resulting in a more difficult presentation at the time." The ALJ's reasoning does not satisfy the clear and convincing standard. Instead, it is based on unsupported speculation regarding Plaintiff's motivation. It is not a reasonable foundation for an adverse credibility finding.

As set forth above, there is nothing in the record to support a finding that Plaintiff has not been credible regarding the extent of his pain caused by his club feet. Also, there is nothing in the record to suggest that Plaintiff is not credible in his statements regarding his ability to perform sustained work. There is nothing in the record that discredits his statements regarding his daily activities. Plaintiff does not shop for himself. Rather, he has a friend do his shopping for him. He rarely goes out of the house. Although he has tried to work, his jobs only last a month or two. He quit his last job because he felt the walls were closing in.

## VIII. Conclusion

The ALJ erred in not giving adequate consideration to the extent of Plaintiff's pain and limitations caused by Plaintiff's club feet, and focused instead on minor inconsistencies in his statements to find him not credible. Additionally, the ALJ erred in rejecting the examining physicians' opinions regarding Plaintiff's mental capacities. The record is clear that Plaintiff experiences significant anxiety and has difficulty being around people.

Remanding this case will serve no useful purpose. *Strauss v. Comm'r,* 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Plaintiff's physical and mental limitations mandate that he be found disabled. This conclusion is supported by the fact that between 1993 and 2000, he was deemed disabled, and there is nothing in the record to suggest that anything changed, especially with respect to his club feet.

Accordingly**, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 15, is **DENIED.**

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 14

3. The decision of the Commissioner denying benefits is reversed and remanded for an award of benefits.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and close the file.

**DATED** this 9th day of September, 2016.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**